UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **LAURA HILTON**, and **ANNA NIKERINA**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**FLUENT, LLC,** and **REWARD ZONE USA, LLC,**<br><br>*Defendants*. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiffs, Laura Hilton and Anna Nikerina, bring this Class Action Complaint against Defendants, Fluent, LLC ("Fluent") and Reward Zone USA, LLC ("Reward Zone"), to stop their practice of sending unsolicited text messages to the cellular telephones of consumers without their prior express written consent, and to obtain redress for all persons injured by Defendants' conduct. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA").

2. Fluent is a "people-based marketing platform that uses real-time, one-to-one interaction to create custom audiences and serve personalized ads that drive performance at scale."[1]

---

[1] http://www.fluentco.com/

3. Reward Zone is a wholly owned subsidiary of Fluent, and operates various lead generation websites including www.consumerproductsusa.com and www.surveyvoicesresearch.com.

4. Fluent, through Reward Zone, covertly drives consumers to its websites to capture consumer information in return for promises of prizes and gift cards that are never ultimately awarded to consumers.

5. Defendants not only send unsolicited text messages to consumers to drive them to their website, but then dupe consumers into providing their cellular telephone numbers which Defendants then sell as leads to their customers, who in turn send unsolicited text messages and autodialed calls of their own to consumers.

6. Upon information and belief, Fluent and Reward Zone acted in concert and/or Fluent had knowledge, consented to, and/or ratified Reward Zone's conduct.  Further, Fluent knowingly received and retained a monetary benefit from Reward Zone's unlawful telemarketing activities.

7. Defendants knowingly and willfully violated the TCPA, causing injuries to Plaintiffs and members of the putative class, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

8. Through this action, Plaintiffs seek injunctive relief to halt Defendants' illegal conduct.  Plaintiffs also seeks statutory damages on behalf of themselves and members of the class, and any other available legal or equitable remedies resulting from the illegal actions of Defendants.

**PARTIES**

9. Plaintiff, Laura Hilton, is a natural person and resident of Reynoldsburg, Ohio.

10. Plaintiff, Anna Nikerina, is a natural person and resident of Chicago, Illinois.

11. Defendant, Reward Zone USA LLC, is a limited liability company organized and existing under the laws of the State of Delaware. Defendant's Manager, Derek Dubner, is a resident of Palm Beach County, Florida. Defendant directs, markets, and provides its business activities throughout the State of Florida.

12. Defendant, Fluent, LLC, is a limited liability company organized and existing under the laws of the State of Delaware. Defendant's Manager, Derek Dubner, is a resident of Palm Beach County, Florida. Defendant's parent, Cogint, Inc., is a Florida corporation with its principal place of business located at 2650 N. Military Trail, Suite 300, Boca Raton, Florida 333431. Derek Dubner is the CEO of Cogint, Inc. Defendant directs, markets, and provides its business activities throughout the State of Florida.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendants because they conduct a significant amount of business in this District, solicit consumers in this District, and sent and continue to send unsolicited text messages in this District.

14. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants conduct a significant amount of business within this District and market to this District.

## THE TCPA

15. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

16. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

17. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

18. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

19. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012)(emphasis supplied).

20. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of*

4

*1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

21. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

22. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

23. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

24. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

25. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

26. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

27. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending her the ***text message***). (emphasis added).

28. Like all Congressional tort actions, the TCPA incorporates vicarious liability principles, including actual and apparent authority, and ratification. The FCC has made this point explicitly, recently stating that a seller "may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer." *See In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois, N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C.R. 6574, ¶ 24 (2013) (hereinafter "*2013 Dish Network Order*").

29. As the FCC explained:

> [T]he seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for

6

> telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case.

*Id.* ¶ 37.

30. Lastly, with respect to standing, as recently held by the United States Court of Appeals for the Ninth Circuit:

> Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA "need not allege any *additional* harm beyond the one Congress has identified."

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)).

31. Similarly, the United States Court of Appeals for the Second Circuit recently held that the receipt of a telemarketing or unsolicited call "demonstrates more than a bare violation and satisfies the concrete-injury requirement for standing." *Leyse v. Lifetime Entm't Servs., LLC*, Nos. 16-1133-cv, 16-1425-cv, 2017 U.S. App. LEXIS 2607 (2d Cir. Feb. 15, 2017) (citing *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) ("The injury-in-fact necessary for standing need not be large; an identifiable trifle will suffice."); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819-21 (8th Cir. 2015) (holding that receipt of two brief unsolicited robocalls as voicemail messages was sufficient to establish standing under TCPA); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (holding that injury under similar TCPA provision may be shown by one-minute occupation of fax machine)).

## FACTS SPECIFIC TO PLAINTIFF LAURA HILTON

32. On June 24, 2017 at 11:49 a.m., Plaintiff Hilton received the below text message from Reward Zone stating, "Welcome back Ayanna, come here http://p8d.co/Jm6KSvW and claim FaceBook survey offering $100 Visa Card. Reply STOP to quit."



33. This text message was sent from short code 68753, a number owned and/or operated by Defendants.

34. The text message was transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

35. The text message constitutes telemarketing because it encouraged the future purchase or investment in property, goods, or services.

36. The hyperlink displayed in the text message is a link to the following website: www.consumerproductsusa.com, a website owned and operated by Reward Zone.

8

37. At no point in time did Plaintiff provide Defendants with her express written consent to be contacted using an ATDS.

38. The impersonal and generic nature of the text message, and the fact the subject text message originated from a short code, demonstrates that an ATDS was utilized in transmitting the message.

39. Specifically, upon information and belief, the subject text messages was sent utilizing a combination of hardware and software systems. The systems have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

40. Defendants' unsolicited text message caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendants' text message also inconvenienced Plaintiff and caused disruption to her daily life.

41. Plaintiff is informed and believes that each of Reward Zone's acts and/or omissions complained of herein were known, consented to, and/or ratified by Fluent.

42. Further, Fluent knowingly received and retained monetary benefit as a result of Reward Zone's unlawful calling and telemarketing practices alleged herein.

43. Upon information and belief, at all times relevant, Fluent had the ability and right to control Reward Zone's conduct.

## FACTS SPECIFIC TO PLAINTIFF ANNA NIKERINA

44.     On July 24, 2017 at 3:10 p.m., Plaintiff Nikerina received an unsolicited text message on her cellular phone from SMS Shortcode 91593 stating "Anna, get paid to share your opinion. Make 300 dollars + today. 8 minutes to signup http://imaglab.com/D30ED4A5 Txt STOP to opt out[.]"





*Figure 1 - July 24, 2017 @ 3:10 PM*

45.     This text message was sent from short code 915-93, a number owned and/or operated by Defendants.

46.     The text message was transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

47.     The text message constitutes telemarketing because it encouraged the future purchase or investment in property, goods, or services.

48. The hyperlink displayed in the text message is a link to the following website: www.surveyvoicesresearch.com, a website owned and operated by Reward Zone.

49. At no point in time did Plaintiff provide Defendants with her express written consent to be contacted using an ATDS.

50. The impersonal and generic nature of the text message, and the fact the subject text message originated from a short code, demonstrates that an ATDS was utilized in transmitting the message.

51. Specifically, upon information and belief, the subject text messages was sent utilizing a combination of hardware and software systems. The systems have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

52. Defendants' unsolicited text message caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendants' text message also inconvenienced Plaintiff and caused disruption to her daily life.

53. Plaintiff is informed and believes that each of Reward Zone's acts and/or omissions complained of herein were known, consented to, and/or ratified by Fluent.

54. Further, Fluent knowingly received and retained monetary benefit as a result of Reward Zone's unlawful calling and telemarketing practices alleged herein.

55. Upon information and belief, at all times relevant, Fluent had the ability and right to control Reward Zone's conduct.

## CLASS ACTION ALLEGATIONS

56. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and all others similarly situated and seek certification of the following Class:

> **Autodialed No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendants (or a third person acting on behalf of Defendants) sent text messages, (2) to the person's cellular telephone number, and (3) for whom Defendants claim they obtained prior express written consent in the same manner as Defendants claim they supposedly obtained prior express written consent to send automated text messages to the Plaintiffs.

57. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Plaintiffs' attorneys; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) the legal representatives, successors or assigns of any such excluded persons; and (5) persons whose claims against Defendanst have been fully and finally adjudicated and/or released. Plaintiffs anticipate the need to amend the Class definitions following appropriate discovery.

58. **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants sent autodialed text messages to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendants' records.

59. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

> (a) whether Defendants' conduct constitutes a violation of the TCPA;

(b) whether Defendants utilized an automatic telephone dialing system to send text messages to members of the Classes;

(c) whether members of the Class are entitled to statutory and treble damages based on the willfulness of Defendants' conduct; and

(d) whether Defendants obtained prior express written consent to contact any Class members.

60. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Class.

61. **Appropriateness**: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiffs' challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
Telephone Consumer Protection Act
(Violation of 47 U.S.C. § 227)
(On Behalf of Plaintiffs the Autodialed No Consent Class)

62. Both Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporate them herein by reference.

63. Defendants sent autodialed text messages to cellular telephone numbers belonging to Plaintiffs and other members of the Autodialed No Consent Class without first obtaining prior express written consent to receive such autodialed text messages.

64. Defendants sent the autodialed text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendants, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendants' autodialer disseminated information *en masse* to Plaintiffs and other consumers.

65. By sending the unsolicited text messages to both Plaintiffs and the cellular telephones of members of the Autodialed No Consent Class without their prior express written consent, and by utilizing an automatic telephone dialing system to make those calls, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

66. Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiffs and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

67. In the event that the Court determines that Defendants' conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Autodialed No Consent Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, pray for the following relief:

68. An order certifying the Class as defined above, appointing Plaintiffs Laura Hilton and Anna Nikerina as the representatives of the Class, and appointing their counsel as Class Counsel;

69. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiffs and the Class Members;

70. An order declaring that Defendants' actions, as set out above, violate the TCPA;

71. A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

72. An order requiring Defendants to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

73. An order requiring Defendants to identify any third-party involved in the autodialed calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

74. An injunction requiring Defendants to cease all unsolicited autodialed calling activities, and otherwise protecting the interests of the Class;

75. An injunction prohibiting Defendants from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

76. An injunction prohibiting Defendants from contracting with any third-party for marketing purposes until they establish and implement policies and procedures for ensuring the third-party's compliance with the TCPA;

77. An injunction prohibiting Defendants from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

78. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

79. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated: November 20, 2017

Respectfully Submitted,

| **HIRALDO P.A.** | **LAW OFFICES OF STEFAN COLEMAN P.A.** |
|---|---|
| */s/ Manuel S. Hiraldo* <br> Manuel S. Hiraldo, Esq. <br> Florida Bar No. 030380 <br> 401 E. Las Olas Boulevard <br> Suite 1400 <br> Ft. Lauderdale, Florida 33301 <br> mhiraldo@hiraldolaw.com <br> Telephone: 954.400.4713 <br><br> *Counsel for Plaintiff and the Class* | Stefan Coleman, Esq. <br> Florida Bar No. 00030188 <br> 201 S. Biscayne Blvd., 28th Floor <br> Miami, Florida 333131 <br> Telephone: (888) 333-9427 <br> Facsimile: (888) 498-8946 <br><br><br> *Counsel for Plaintiff and the Class* |