## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No.: 17-81270-CV-MIDDLEBROOKS/BRANNON

LAURA HILTON and ANNA NIKERINA,
individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

FLUENT, LLC, and REWARD ZONE USA,
LLC,

      Defendants.

_____/

### DEFENDANTS' MOTION TO COMPEL ARBITRATION

      Defendants, Fluent, LLC ("Fluent") and Reward Zone USA, LLC ("Reward Zone") (collectively, "Defendants"), hereby move to compel arbitration of the claims raised in Plaintiffs' Class Action Complaint ("Complaint" of "Compl.") [ECF No. 1] as required by the Terms & Conditions agreed to by the Plaintiffs.  In support thereof, Defendants state as follows:

### INTRODUCTION

      On November 20, 2017, Plaintiffs, Laura Hilton ("Hilton"), a resident of Ohio, and Anna Nikerina ("Nikerina"), a resident of Illinois, filed the Complaint, alleging a putative class action for violations under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., (the "TCPA").  (Compl. at ¶¶ 1, 9-10).  In bringing this putative class action, Plaintiffs (both non-residents of Florida) disregard the Terms and Conditions to which they agreed when they accessed Reward Zone's website and registered to participate in Reward Zone's promotions. The Terms and Conditions contain a mandatory dispute resolution provision which requires that Plaintiffs' claims be arbitrated before the American Arbitration Association in New York, not litigated in Florida (or any other) courts.  Further, the entire Complaint is prohibited by the

Terms and Conditions pursuant to which Plaintiffs expressly waive their right to a jury trial and expressly waive any right they may have to bring or participate in a class action against Defendants.  Accordingly, the Court is not the proper forum to adjudicate this action, which is only properly adjudicated in arbitration by the American Arbitration Association, as Plaintiffs agreed, and only on an individual basis, as Plaintiffs also agreed. Moreover, to the extent Plaintiffs may contend – incorrectly – that their claims are outside the ambit of the arbitration provision, they also expressly delegated that issue to the arbitrator.

## FACTUAL BACKGROUND

Plaintiffs agreed to the mandatory dispute resolution procedures set forth in the Terms and Conditions on Reward Zone's website.  *See* Declaration of Daniel Barsky, Esq., attached as **Exhibit A,** at ¶¶ 6-7; Exhibits 1 and 2 thereto.[1]  In order to participate in promotions and reward surveys on one of Reward Zone's websites, users are required to register and agree to the Terms and Conditions of Reward Zone's website.  Users then have the option of consenting to receive texts and telemarketing calls to the telephone numbers provided.   (*Id.* ¶ 5).

On March 23, 2017, a user believed to be Hilton visited one of Reward Zone's website and registered to participate in reward surveys and other marketing promotions.  (*Id.*  ¶ 6).  The user registered with the telephone number 513-388-8083 – which is the phone number identified by Hilton's attorney as hers – using the name "Ayanna Guthrie," from Cincinnati, Ohio.  (*Id.*; Ex. 1 thereto).  Hilton agreed to the Terms and Conditions of Reward Zone's website, which includes a mandatory arbitration provision by clicking the "Submit" button on the registration

---

[1] The Court may consider evidence outside the pleadings when resolving a motion to enforce an arbitration agreement under the Federal Arbitration Act.  *AXA Distribs., LLC v. Bullard*, No. 1:08-CV-188-WKW, 2008 WL 5411940, at *4 (M.D. Ala. Dec. 24, 2008) (citing, among others, *Chastain v. Robinson–Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992)); *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000).

page.  (*Id.*; Ex. 1 thereto).  A screenshot of the page where Hilton consented to the Terms and Conditions is below.



Hilton then provided her express written consent to receive telemarketing calls and text messages from Reward Zone and its marketing partners to the supplied telephone number by checking the unchecked check box and clicking the "Continue" button.  (*Id.*)   A screenshot of the TCPA consent page is below.

### CONFIRM YOUR INFORMATION TO FINISH YOUR REGISTRATION

| FIRST NAME | LAST NAME | EMAIL |
|---|---|---|
| Ayanna | Guthrie | ayannaguthrierKd... |

| ZIP CODE | DATE OF BIRTH | PRIMARY PHONE |
|---|---|---|
| 45237 | 2 / 5 / 1984 | 513 - 388 - 8083 |

*(You must be 18 years or older)*

By checking the box below I consent to receive phone sales calls and text messages - Msg and data rates may apply - from Verde Energy, CAC and our Marketing Partners on the landline or mobile number I provided even if I am on a federal or State do not call registry. I understand these calls may be generated using an autodialer and may contain pre-recorded messages and that consenting is not required to participate in the offers promoted.

For SMS message campaigns: Text STOP to stop and HELP for help. Msg & data rates may apply. Periodic messages; max. 30/month.

**☑ I CONFIRM** that all of my information is accurate and consent to be called and texted as provided above.

**CONTINUE ≫**

**Submit Date Time: 3/26/2017 6:47:34 AM EST**

On May 15, 2017, Plaintiff Nikerina visited one of Reward Zone's websites and registered to participate in reward surveys and other marketing promotions.  (*Id.* ¶ 7).  Nikerina supplied the telephone number 224-715-6484 and the name Anna Nikerina when she registered. (*Id.*; Ex. 2 thereto).   Nikerina agreed to the Terms and Conditions of Reward Zone's website, which includes a mandatory arbitration provision by clicking the "Submit" button on the registration page.   (*Id.*; Ex. 2 thereto).   A screenshot of her agreement to the Terms and Conditions is below.



Timestamp: 5/15/2017 8:20:57 AM EST

Nikerina then provided her express written consent to receive telemarketing calls and text messages from Reward Zone and its marketing partners to the supplied telephone number by checking the unchecked check box and clicking the Continue button.   (*Id.*; Ex. 2 thereto).   A screenshot of the TCPA consent page is below.

**CONFIRM YOUR INFORMATION TO FINISH YOUR REGISTRATION**

| FIRST NAME | LAST NAME | EMAIL |
|---|---|---|
| Anna | Nikerina | joe.wallace2@gmx.... |
| ZIP CODE | DATE OF BIRTH | PRIMARY PHONE |
| 60611 | 10 / 07 / 1987 | 224 - 715 - 6484 |

*(You must be 18 years or older)*

By checking the box below I consent to receive phone sales calls and text messages - Msg and data rates may apply - from Verde Energy, CAC and our Marketing Partners on the landline or mobile number I provided even if I am a federal or State do not call registry. I understand these calls may be generated using an autodialer and may contain pre-recorded messages and that consenting is not required to participate in the offers promoted.
For SMS message campaigns: Text STOP to stop and HELP for help. Msg & data rates may apply. Periodic messages; max. 30/month.

☑ **I CONFIRM** that all of my information is accurate and consent to be called and texted as provided above.

**CONTINUE »**

Submit Date Time: 5/15/2017 8:22:53 AM EST

4

The Terms and Conditions in effect when both Plaintiffs registered on Reward Zone's website are attached as Exhibit 3 to the Barsky Declaration. (*Id.* ¶ 8). The "Arbitration/Dispute Resolution" clause set forth on pages 3 and 4 of the operative Terms and Conditions provides:

**Arbitration/Dispute Resolution:**

If you have a dispute concerning any aspect of these Terms & Conditions, the RZU Website, your participation in a Promotion, or entitlement to an Incentive, you should first contact customer support on the RZU Website or by completing a customer support ticket. We will attempt to resolve the matter to your satisfaction within thirty (30) days of our receipt of a customer support ticket. We may choose to provide you with a final written settlement offer during this process. If we provide you with a final written settlement offer and you don't accept it, or we can't otherwise satisfactorily resolve your dispute or you chose to skip this step, you can submit your dispute for resolution by arbitration before the American Arbitration Association ("AAA") in the county where you live by filing a separate Demand for Arbitration online by following the instructions at https://apps.adr.org/webfile/. You will need our mailing address to file online. To obtain our mailing address, contact us by clicking here.

If we have a dispute, we will submit our dispute for resolution by arbitration before the AAA in New York, NY. If either party files for arbitration, it will be conducted in accordance with the then current AAA Commercial Arbitration Rules. The arbitrator will have exclusive authority to resolve any dispute including any claim that all or any part of the Terms & Conditions, including this provision, are unenforceable. If you proceed to arbitration, we will pay all AAA filing, administration and arbitrator fees unless the arbitrator determines that your claim is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)). For claims brought by you of Ten Thousand Dollars ($10,000.00) or less, you can choose whether the arbitration proceeds in person, by telephone or based only on submissions. The arbitrator may award any form of individual or equitable relief, including injunctive relief. Any award will be final and conclusive to the parties and may be entered in any court of competent jurisdiction. If you initiate arbitration and the arbitrator awards you relief that is greater than our final written settlement offer made before an arbitrator was selected, then we will pay you a minimum recovery of Five Hundred Dollars ($500.00), plus we will reimburse any reasonable expenses incurred by your attorney, if any, including fees reasonably accrued for investigating, preparing and pursuing the claim in arbitration. Although under some laws we may have a right to an award of attorneys' fees and expenses if we prevail in arbitration, we agree that we will not seek such an award from you. You and your attorneys are not required to keep the results of the arbitration confidential. This provision shall not be construed to preclude any party from seeking injunctive relief to protect its rights pending an outcome in arbitration.

> You agree to the entry of injunctive relief to stop such a lawsuit or to remove you as a participant in such a suit. The Terms & Conditions do not constitute a waiver of any of your rights and remedies to pursue a claim individually and not as a class action in binding arbitration as provided above. This provision preventing you from bringing, joining or participating in class action lawsuits is an independent agreement. You may opt-out of these Dispute Resolution Provisions by providing written notice of your decision within thirty (30) days of the date that you first register on the RZU Website.
>
> **YOU ACKNOWLEDGE AND AGREE THAT, VIA YOUR ACCEPTANCE OF THESE DISPUTE RESOLUTION PROVISIONS, YOU WAIVE ANY RIGHT TO A JURY TRIAL, AS WELL AS YOUR RIGHT TO BRING, JOIN OR PARTICIPATE AS A PLAINTIFF OR A CLASS MEMBER IN A CLASS ACTION SUIT OR MULTI-PARTY ARBITRATION BROUGHT AGAINST US, ANY PERSON RELATED TO US OR A SERVICE PROVIDER USED BY US TO PROVIDE THE SERVICE.**

*Id*. ¶ 9 (bold and capitals in original).

Although the Arbitration/Dispute Resolution provision allows a user to opt out within 30 days, neither Plaintiff opted out of the Arbitration/Dispute Resolution provision.  (*Id.* ¶ 11). Because both Plaintiffs agreed to the Arbitration/Dispute Resolution provision and neither Plaintiff opted out of the provision, they remain bound to it and must individually arbitrate their claims.   Neither Plaintiff has complied with the requirements of the Arbitration/Dispute Resolution provision, which provides that they should try to resolve any disputes with customer service before commencing an arbitration proceeding.  (*Id.* ¶ 12).  Defendants, on the other hand, have complied with the Terms and Conditions[2] by initiating individual arbitration proceedings to resolve each of the Plaintiffs' disputes.  (*Id.* ¶ 13).

Additionally, Plaintiffs expressly waived their right to a jury trial and to bring or participate as a plaintiff or class member in a class action suit, and are therefore barred from bringing this putative class action Complaint against Defendants.

---

[2] The Terms and Conditions provide: "If we have a dispute, we will submit our dispute for resolution by arbitration before the AAA in New York, NY."  *See* p. 3.

**ARGUMENT**

**I.    Plaintiffs' Claims Are Subject to Arbitration.**

**A.    The Arbitration/Dispute Resolution Provision Must Be Enforced.**

Section 2 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), provides that written

agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as

exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The central purpose of

the FAA "is to ensure that private agreements to arbitrate are enforced according to their terms."

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quotations omitted); *see

also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995).   The United States

Supreme Court has repeatedly emphasized that the FAA enunciates a "strong federal policy in

favor of arbitration agreements" that requires courts to "rigorously enforce agreements to

arbitrate."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 221 (1985); *Marmet Health

Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203 (2012) (quoting *KPMG LLP v. Cocchi*, 132 S.

Ct. 23, 25 (2011), and *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614,

631 (1985))(stating that the FAA "reflects an emphatic federal policy in favor of arbitral dispute

resolution."); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1742 (2011) ("courts must

place arbitration agreements on an equal footing with other contracts … and enforce them

according to their terms"); *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (the

FAA "requires courts to enforce agreements to arbitrate according to their terms"); *Cocchi*, 132

S. Ct. at 25-26 ("the Act leaves no place for the exercise of discretion by a district court, but

instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as

to which an arbitration agreement has been signed") (emphasis in original); *accord, Hanover Ins.

Co. v. Atlantis Drywall & Framing LLC*, 579 F. App'x 742, 744 (11th Cir. 2014) ("[c]ourts must

rigorously enforce agreements to arbitrate, even if doing so means piecemeal litigation")
(quotation omitted). Furthermore, federal policy applies "notwithstanding any state substantive
or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1, 24 (1983).

> The Supreme Court has also emphasized that arbitration is favored in consumer disputes:
>
> We agree that Congress, when enacting [the FAA], had the needs of consumers,
> as well as others, in mind …. [T]he Act, by avoiding the delay and expense of
> litigation, will appeal to big business and little business alike, … corporate
> interests [and] … individuals. Indeed, arbitration's advantages often would seem
> helpful to individuals, say, complaining about a product, who need a less
> expensive alternative to litigation.

*Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 280 (1995) (quotation marks omitted).

Notably, the merits cannot be considered when deciding an arbitration motion. *See, e.g.*,
*AT&T Technologies, Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 649-50 (1986); *Rite Aid of
PA, Inc. v. UFCW Union, Local 1776*, 595 F.3d 128, 131-32 (3d Cir. 2010). Rather, the FAA
requires a court to engage "in a limited review to ensure that the dispute is arbitrable – *i.e.*, that a
valid agreement to arbitrate exists between the parties and that the specific dispute falls within
the substantive scope of that agreement," and where "the court determines that an agreement
exists and that the dispute falls within the scope of that agreement, it then must refer the matter
to arbitration without considering the merits of the dispute." *PaineWebber, Inc. v. Hartmann*,
921 F.2d 507, 511 (3d Cir. 1990). A party challenging an arbitration clause bears the burden to
show it is unenforceable, and "any doubts concerning the scope of arbitrable issues should be
resolved in favor of arbitration," including when "constru[ing] . . . the contract language itself."
*Id.* at 24-25; *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000); *Ivax
Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002).

With respect to online agreements, this Court has enforced an arbitration agreement implemented through online procedures.  In *Brueggemann v. NCOA Select*, Inc., No. 08-80606-CIV, 2009 WL 1873651, at *2 (S.D. Fla. June 30, 2009), Judge Marra enforced an arbitration agreement contained in Overstock's terms and conditions.  Prior to entering the website, individuals were told that "[e]ntering this Site will constitute your acceptance of these terms and conditions.  If you do not agree to abide by these terms, please do not enter the Site."  The court rejected the plaintiff's unsupported contention that he never saw or agreed to arbitrate.  *Id*.

Numerous other courts have also enforced online agreements.  *See, e.g.*, *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1107 (C.D. Cal. 2007) (website users bound to terms of use where hyperlink to terms was available on website pages); *Molnar v. 1-800-Flowers.com, Inc.*, No. CV 08-0542, 2008 WL 4772125, at *7 (C.D. Cal. Sept. 29, 2008) (denying plaintiff-consumer's motion to dismiss counterclaim for breach of forum selection clause where consumer accessed defendant-company's website); *Facebook, Inc. v. Power Ventures, Inc.*, No. C-08-05780 JW, 2010 WL 3291750, at *7 n. 20 (N.D. Cal. July 20, 2010) (noting that "in the act of accessing or using the Facebook website alone, [defendant] acceded to the Terms of Use and became bound by them"); *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 982-84 (2005) (enforcing arbitration provision against consumers who made purchases on Dell website); *Cairo, Inc. v. Crossmedia Servs., Inc.*, No. C 04-04825 JW, 2005 WL 756610, at *5 (N.D. Cal. Apr. 1, 2005) (enforcing forum selection provision); *Sw. Airlines Co. v. Boardfirst, LLC*, No. 3:06-CV-0891-B, 2007 WL 4823761, at *5-7 (N.D. Tex. Sept. 12, 2007) (enforcing terms of online agreement); *Pentecostal Temple Church v. Streaming Faith, LLC*, No. 08-554, 2008 WL 4279842, at *5 (W.D. Pa. Sept. 16, 2008) (enforcing forum selection provision in online agreement); *Greer v. 1-800-Flowers.com, Inc.*, No. H-07-2543, 2007 WL 3102178, at *2

(S.D. Tex. Oct. 3, 2007) (enforcing forum selection against consumer who accessed company's website); *Major v. McCallister*, 302 S.W.3d 227, 230-31 (Mo. Ct. App. 2009) (enforcing forum selection clause against consumer who accessed website).

The enforceability of an online agreement ultimately depends on traditional contract principles regarding offer and acceptance. "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract. It is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes acceptance of the terms, which accordingly become binding on the offeree." *Register.com v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) (citations omitted). Accordingly, the Court when, as here presented with a written arbitration agreement, must enforce it unless Plaintiffs meet their heavy burden to show that the agreement should not be enforced. *See Brueggemann*, 2009 WL 1873651, at *4 (finding that online arbitration agreement must be enforced given that plaintiff failed to carry his burden to show that the arbitration agreement was unconscionable and therefore unenforceable).

> **B.** **Plaintiffs' Claims Are Subject to the Arbitration/Dispute Resolution Provision in the Terms and Conditions.**

The Terms and Conditions require that any disputes Plaintiffs may have against Reward Zone that cannot be informally resolved between the parties must be submitted to an individual, binding arbitration in New York governed by the American Arbitration Association's rules for commercial arbitration. (Terms and Conditions, Arbitration/Dispute Resolution p. 3-4). "[T]here is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is

not susceptible of an interpretation that covers the asserted dispute." *Dist. No. 1-Marine Eng'rs Beneficial Ass'n, AFL-CIO v. GFC Crane Consultants*, 331 F.3d 1287, 1290 (11th Cir. 2003).

The Arbitration/Dispute Resolution must be enforced because Plaintiffs each agreed to the Terms and Conditions, including the mandatory arbitration provision, when they registered to participate in reward surveys and other marketing promotions on the Reward Zone website. (Terms and Conditions, Arbitration/Dispute Resolution p. 3-4). Although the Arbitration/Dispute Resolution provision allows a user to opt out within 30 days, *see id*. ("You may opt-out of these Dispute Resolution Provisions by providing written notice of your decision within thirty (30) days of the date that you first register on the RZU Website."), neither Hilton nor Nikerina opted out of the Arbitration/Dispute Resolution provision's requirements. Because Plaintiffs did not opt out of the Arbitration/Dispute Resolution agreement, they remain bound by it. *See Suarez v. Uber Techs., Inc.,* 8:16-CV-166-T-30MAP, 2016 WL 2348706, at *3 (M.D. Fla. May 4, 2016), *aff'd,* 688 Fed. Appx. 777 (11th Cir. 2017) (compelling arbitration where the contract was not unconscionable and claimants failed to opt out of arbitration); *McDougal v. Comcast Corp.*, 16-81906-CIV, 2017 WL 3726040, at *5 (S.D. Fla. Feb. 24, 2017) (Middlebrooks, J.) (compelling arbitration where the contract was not unconscionable and claimants failed to opt out of arbitration).

Plaintiffs' claims fall squarely within the Dispute Resolution provision. Their Complaint alleges that Defendants violated the TCPA by sending text messages to their cellular phones without their prior express written consent. (Compl. ¶¶ 37, 49). The Dispute Resolution provision requires the arbitration of any "dispute concerning any aspect of these Terms & Conditions, the RZU Website, your participation in a Promotion, or entitlement to an Incentive." (Terms and Conditions, Arbitration/Dispute Resolution p. 3-4).

Plaintiffs' claim that Defendants violated the TCPA by sending them text messages because they did not provide consent to receive text messages is directly related to their use of Reward Zone's website and their registration to participate in promotions.  Plaintiffs' claims unequivocally fall within the Dispute/Arbitration Provision.  *See Brown v. ITT Consumer Fin. Corp.,* 211 F.3d 1217, 1221 (11th Cir. 2000) ("A party cannot avoid arbitration, however, because the arbitration clause uses general, inclusive language, rather than listing every possible specific claim."); *Anders v. Hometown Mortg. Services, Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003) (finding that the arbitration provision encompassed the dispute and "could not have been broader."  Any disputes means all disputes, because "'any' means all.") (internal citations omitted).  Accordingly, the issues raised by the Complaint fall centrally within the scope of Dispute Resolution/Arbitration provision and, therefore, must be arbitrated.

**C.    Any Dispute Regarding the Enforceability and Scope of the Dispute Resolution Provision Is Delegated to the Arbitrator for Resolution.**

The parties to a contract may agree to have an arbitrator, rather than a court, determine whether the contract's arbitration agreement is enforceable.  These clauses are generally referred to as "delegation clause[s]" and are routinely upheld.  *See Parnell v. CashCall, Inc.,* 804 F.3d 1142, 1146 (11th Cir. 2015) ("parties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable"); *Terminix Intern. Co., LP v. Palmer Ranch Ltd. P'ship,* 432 F.3d 1327, 1333 (11th Cir. 2005) (compelling arbitration where parties agreed to have arbitrator determine arbitrability); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010).  Where an "arbitration agreement contains a broad, valid, and enforceable delegation provision that expresses the parties' clear and unmistakable intent to arbitrate gateway questions of arbitrability, including questions concerning the interpretation, applicability, enforceability, and formation of the agreement"

courts are "are obliged to enforce the parties' clear intent to arbitrate these issues." *Jones v.
Waffle House, Inc.*, 866 F.3d 1257, 1262 (11th Cir. 2017).

The delegation clause enforced by the Eleventh Circuit in *Waffle House* is akin to the
delegation clause in this case—it provided that the arbitrator "shall have authority to resolve any
dispute relating to the interpretation, applicability, enforceability or formation of this Agreement,
including but not limited to any claim that all or any part of this Agreement is void or voidable."
*Id.* The delegation clause in the Arbitration/Dispute Resolution provision contained in the Terms
and Conditions vests the power to resolve any dispute with the arbitrator.  According to the
provision, "The arbitrator will have exclusive authority to resolve any dispute including any
claim that all or any part of the Terms & Conditions, including this provision, are
unenforceable."  (Terms and Conditions, Arbitration/Dispute Resolution p. 3-4).  The language
of the delegation clause of the Arbitration/Dispute Resolution provision clearly manifests the
parties' intent to arbitrate the gateway issue of whether the dispute is subject to arbitration.  *See
Waffle House, Inc.*, 866 F.3d at 1270; *Richemond v. Uber Techs., Inc.*, 263 F. Supp. 3d 1312,
1315 (S.D. Fla. 2017) (Gayles, J.) (finding that the agreements between the parties require an
arbitrator to decide the threshold issue of enforceability); *Steele v. Santander Consumer USA,
Inc.*, 14-60741-CIV, 2014 WL 4049963, at *2 (S.D. Fla. Aug. 15, 2014) (Moreno, J.)
(compelling arbitration where the arbitration provision expressly delegates to the arbitrator all
"disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or
this Contract."); *Senior Services of Palm Beach LLC v. ABCSP Inc.*, 12-80226-CIV, 2012 WL
2054971, at *3 (S.D. Fla. June 7, 2012) (Cohn, J.) (granting the motion to dismiss to allow the
arbitrator to decide the validity of the arbitration clause where the parties agreed that arbitrability
shall be determined by the arbitrator);

The delegation clause contained in the Terms and Conditions, like that in *Waffle House* (and the aforementioned cases) is clear, legible and comprehensible and Plaintiffs had the opportunity to review the Terms and Conditions at their leisure prior to accepting them. *See Waffle House*, 866 F. 3d at 1266.  Therefore, to the extent Plaintiffs contest the arbitrability of their claims, the delegation clause requires that the arbitrator, not this Court, determine the scope and enforceability of the arbitration provision.

> **D.      Fluent Is Entitled to Compel Arbitration of Plaintiffs' Claims.**

Although Fluent is not a signatory to the Terms and Conditions, it may nonetheless compel arbitration of Plaintiffs' claims against it.  A non-party may compel arbitration if the relevant state contract law allows him to enforce the arbitration agreement.  *Arthur Andersen, LLP v. Carlisle*, 129 S.Ct. 1896, 1903 (2009).  Here, the Terms and Conditions provide that New York law governs.  (Barsky Decl. ¶ 9; Terms and Conditions at p. 3).

> 1.      *New York Law Allows Fluent to Compel Arbitration.*

Under New York law, a non-signatory can compel arbitration under the doctrine of equitable estoppel when "a careful review of 'the relationship among the parties, the contracts they signed ..., and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'"  *Denney v. BDO Seidman, LLP*, 412 F.3d 58, 70 (2d Cir. 2005) (internal citations omitted).  "[I]n addition to the 'intertwined' factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement."  *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008).

14

In *Ross v. American Exp. Co.*, 547 F.3d 137, 144 (2d Cir. 2008), the Second Circuit recognized its significant line of cases that have allowed a non-party to assert estoppel against a party seeking to avoid arbitration and noted that those cases "share a common feature in that the non-signatory party asserting estoppel has had some sort of corporate relationship to a signatory party; that is, this Court has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities."  (citing *Contec Corp. v. Remote Solution Co., Ltd*., 398 F.3d 205, 209 (2d Cir. 2005) (holding that post-merger survivor corporation could invoke arbitration agreement signed by corporation subsumed in merger); *JLM Industries, Inc. v. Stolt-Nielsen, S.A.*, 387 F.3d 163, 178 (2d Cir. 2004) (holding that plaintiffs could not avoid arbitration of antitrust conspiracy claim where plaintiffs argued that the conspiratorial conduct giving rise to claim was undertaken by non-signatory parent companies rather than contracting subsidiaries); *Astra Oil Co., Inc. v. Rover Navigation, Ltd.*, 344 F.3d 276, 280 (2d Cir. 2003) (compelling arbitration where plaintiff acted toward non-signatory affiliated corporation "as if it were signatory"); *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l., Inc*., 198 F.3d 88, 97 (2d Cir. 1999) (compelling plaintiff to arbitration where "it treated a group of related companies as though they were interchangeable").

Applying the foregoing to the facts here, where Plaintiffs are attempting to hold Fluent liable solely for the acts of its subsidiary, which are inextricably intertwined with the Plaintiffs' use of its websites, Fluent has the right to compel arbitration with the Plaintiffs.

> 2. *Florida Law Permits Fluent to Compel Arbitration*.

If the Court finds that Florida applies, Fluent would still be permitted to compel arbitration of Plaintiffs' claims pursuant to the doctrine of equitable estoppel.  "'Equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises

15

allegations of concerted conduct by both the non-signatory and one or more of the signatories to the contract.'" *Maldonado v. Mattress Firm, Inc.*, 2013 WL 2407086, at *4 (M.D. Fla. June 3, 2013) (international citations omitted) (permitting non-signatory to contract to compel arbitration where no independent claim was raised against the non-signatory and plaintiffs failed to distinguish between the actions of the various defendants, thus effectively asserting "interdependent and concerted conduct" between the defendants); *see also Allertek Systems, LLC v. Pillar Wellness & Rehab, Inc.*, No. 07-80971-CIV, 2008 WL 11333231, at *3 (M.D. Fla. Feb. 21, 2008) (Middlebrooks, J.) (holding that non-signatory could compel arbitration where claims against him were "substantially interdependent and involve[d] concerted misconduct" by him and the other signatory defendant and the claims against both defendants were substantially similar).

Further, a non-party may enforce an arbitration agreement if a plaintiff's allegations are "intimately founded in and intertwined with the underlying contract obligations." *McBro Planning & Dev. Co. v. Triangle Elec. Const. Co.*, 741 F.2d 342, 344 (11th Cir. 1984) *abrogated on other grounds, Lawson v. Life of the S. Ins. Co.*, 664 F. App'x 828 (11th Cir. 2011). Here, the claims against Reward Zone are "intimately founded in" the Terms and Conditions because their claims against Reward Zone directly relate to Plaintiffs' use of the Reward Zone website and participation in promotions. These two issues are clearly arbitrable under the Terms and Conditions. (Terms and Conditions, p. 3). Plaintiffs' claims against Fluent are "substantially interdependent" with the claims against Reward Zone. Plaintiffs do not allege that Fluent took any independent action that caused them injury. Rather, the allegations against Fluent solely relate to Fluent's role as parent company of Reward Zone and its purported vicarious liability for Reward Zone's actions. (Compl. ¶¶ 41-43; 53-55). It would be impractical (if not impossible) to

16

adjudicate Plaintiffs' claims against Reward Zone in an arbitration proceeding while continuing to litigate Plaintiffs' vicarious liability claims against Fluent in federal court.  Because Plaintiffs' claims against Fluent are "substantially interdependent" with the claims against Reward Zone, Fluent has the right to compel arbitration of Plaintiffs' claims in accordance with the Terms and Conditions.

<u>**CONCLUSION**</u>

Wherefore, Defendants Fluent, LLC and Reward Zone USA, LLC respectfully request that the Court compel arbitration of the claims raised in Plaintiffs' Complaint and grant such other and further relief as this Court deems just and proper.

Date: January 12, 2018                              Respectfully submitted,

**AKERMAN LLP**
777 South Flagler Drive
Suite 1100 West Tower
West Palm Beach, FL 33401
Tel:  (561) 653-5000
Fax:  (561) 659-6313
*Attorneys for Defendants*


*/s/ Erin M. Maddocks*
Lawrence P. Rochefort, Esq.
Florida Bar No. 769053
Erin M. Maddocks, Esq.
Florida Bar No. 052350

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 12th day of January, 2018, I electronically filed *Defendants' Motion to Compel Arbitration* with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on parties as listed (through counsel or those reflected as appearing without counsel) on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *<u>/s/ Erin M. Maddocks</u>*
Attorney

<u>**SERVICE LIST**</u>

*Hilton v. Fluent, LLC*
**Case No. 9:17-cv-81270-MIDDLEBROOKS/BRANNON**
<u>**U.S. District Court, Southern District of Florida**</u>

***Counsel for Plaintiffs Laura Hilton***
***and Anna Nikerina***
(service by ECF)

Manuel S. Hiraldo, Esq.
**HIRALDO P.A.**
401 East Las Olas Boulevard – Suite 1400
Ft. Lauderdale, FL 33301
Tel.: 954-400-4713
E-mail: <u>mhiraldo@hiraldolaw.com</u>

Stefan Coleman, Esq.
**LAW OFFICES OF STEFAN COLEMAN P.A.**
201 South Biscayne Boulevard – 28th Floor
Miami, FL 333131
Tel.: 888-333-9427
Fax: 888-498-8946
E-mail: <u>law@stefancoleman.com</u>

***Counsel for Defendants Fluent, LLC,***
***and Reward Zone USA, LLC***
(service by ECF)

Christopher S. Carver, Esq.
**AKERMAN LLP**
350 East Las Olas Boulevard – Suite 1600
Ft. Lauderdale, FL 33301
Tel.: 954-463-2700
Fax: 954-468-2454
E-mail: <u>christopher.carver@akerman.com</u>

Lawrence P. Rochefort, Esq.
Erin M. Maddocks, Esq.
**AKERMAN LLP**
777 South Flagler Drive
Suite 1100 West Tower
West Palm Beach, FL 33401
Tel: 561-653-5000
Fax: 561-659-6313
E-mail: <u>lawrence.rochefort@akerman.com</u>
E-mail: <u>erin.maddocks@akerman.com</u>