UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:17-cv-81270-DMM

| | |
|---|---|
| **LAURA HILTON, ANNA NIKERINA**, **EBONIE ORR**, **JOHN BROOKS**, and **WHITNEY TRZUPEK**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**FLUENT, LLC,** and **REWARD ZONE USA, LLC,**<br><br>*Defendants*. | **CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Plaintiffs, Laura Hilton ("Plaintiff Hilton") and Anna Nikerina ("Plaintiff Nikerina") (collectively referred to as "Plaintiffs"), hereby file their Response in Opposition to Defendants' Motion to Compel Arbitration, [ECF No. 22], and state as follows:

**I.   INTRODUCTION**

Defendants do not dispute that they sent unsolicited telemarketing text messages to the cellular telephones of Plaintiffs and members of the putative class. Instead, Defendants seek to dodge liability by attempting to force Plaintiffs into arbitration. According to Defendants, Plaintiffs visited a website operated by Defendant Reward Zone USA, LLC ("Defendant Reward Zone"), and agreed to Terms and Conditions on that website containing a narrow arbitration clause. Tellingly, Defendants do not disclose the website they claim Plaintiffs visited. More importantly, and fatal to Defendants' requested relief, is the fact that Plaintiffs did not agree to the Terms and

1

Conditions on the website and did not complete Defendants' on-line registration forms and, therefore, did not enter into an agreement with Defendants to arbitrate.

In fact, Defendants themselves are unsure whether an agreement to arbitrate even exists. Defendants claim that "a user believed to be Plaintiff Hilton" visited some undisclosed website. More than Defendants' "belief" is needed to deprive Plaintiffs of their federal privacy rights under the TCPA. Simply put, Defendants have failed to meet their burden to establish that a valid and enforceable arbitration agreement exists.

Further, an agreement to arbitrate does not exist because the scope of purported arbitration agreement does not encompass Plaintiffs' TCPA claims. The purported agreement to arbitrate covers disputes "concerning any aspect of these Terms & Conditions, the RZU website, your participation in a Promotion, or entitlement to an Incentive…" [*See* ECF No. 22-1 at pg. 3]. Plaintiffs' claims do not fall within any of these categories. Plaintiffs' claims involve unsolicited text messages from Defendants, not the Terms and Conditions, Defendants' website, Plaintiffs' participation in any promotion, or entitlement to any incentive from Defendants.

Defendants' remaining argument is unpersuasive. Defendant Fluent, LLC ("Defendant Fluent"), was not a party to the purported agreement. Therefore, even if the Court finds that an agreement to arbitrate exists and that the agreement encompasses Plaintiffs' claims, only Defendant Reward Zone would be entitled to enforce the agreement, not Defendant Fluent. For these reasons, Defendants' Motion to Compel should be denied and the case permitted to proceed on the merits.

## II. FACTS

Defendant Fluent is a "people-based marketing platform that uses real-time, one-to-one interaction to create custom audiences and serve personalized ads that drive performance at scale."

2

[ECF No. 27 at ¶ 3]. Defendant Reward Zone operates various lead generation websites including www.consumerproductsusa.com and www.surveyvoicesresearch.com. *Id*. at ¶ 4. Defendant Fluent, through Defendant Reward Zone, drives consumers to its various websites to capture consumer information. *Id*. at ¶ 5. To drive consumers to its websites, Defendants transmit text messages to consumers' cellular telephones that contain links to Defendants' various lead generation websites. *Id*. at ¶ 6.

Such was the case here. Specifically, on June 24, 2017, Plaintiff Hilton received the following automated text message from Defendants: "Welcome back Ayanna, come here http://p8d.co/Jm6KSvW and claim FaceBook survey offering $100 Visa Card. Reply STOP to quit." *Id*. at ¶ 42. The hyperlink contained in the text message was a link to the following website owned and operated by Defendant Reward Zone: www.consumerproductsusa.com. *Id*. at ¶ 46.

Prior to receiving this text message, Plaintiff Hilton had not completed Defendant's on-line registration form. *See* Declaration of Plaintiff Hilton attached as **Exhibit A** at ¶ 4. Further, Plaintiff Hilton never saw or agreed to Defendant's on-line Terms and Conditions, and did not agree to arbitrate the claims asserted in this litigation. *See id*. at ¶¶ 10-11. Notably, the personal information contained in Defendant's registration form is not Plaintiff Hilton's information. *See id*. at ¶¶ 5-9.

Like Plaintiff Hilton, Plaintiff Nikerina received the following automated text message on her cellular phone from Defendants: "Anna, get paid to share your opinion. Make 300 dollars + today. 8 minutes to signup http://imaglab.com/D30ED4A5 Txt STOP to opt out[.]" *Id*. at ¶ 58. The hyperlink contained in the text message was a link to the following Reward Zone website: www.surveyvoicesresearch.com. *Id*. at ¶ 62.

And like Plaintiff Hilton, Plaintiff Nikerina did not complete Defendant's on-line

3

registration form prior to receiving the text message. *See* Declaration of Plaintiff Nikerina attached as **Exhibit B** at ¶ 4. Further, Plaintiff Nikerina never saw or agreed to Defendant's on-line Terms and Conditions, and did not agree to arbitrate the claims asserted in this litigation. *See id*. at ¶¶ 8-9. Notably, the personal information contained in Defendant's registration form is not Plaintiff Nikerina's information. *See id*. at ¶¶ 5-7.

### III.   LEGAL STANDARD

In ruling on a motion to compel arbitration, a district court must consider three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived. *See Sims v. Clarendon Nat'l Ins. Co*., 336 F.Supp.2d 1311, 1326 (S.D. Fla. 2004).

A valid agreement to arbitrate exists when "the parties agreed to arbitrate" and "the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (quotation marks and citations omitted). An issue is arbitrable if it is subject to decision by arbitration or referable to an arbitrator or arbiter. "While there is a liberal federal policy favoring arbitration agreements, 'the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate.'" *Mims v. Global Credit & Collection Corp*., 803 F. Supp. 2d 1349, 1353 (S.D. Fla. 2011) (quoting *Becker v. Davis*, 491 F.3d 1292, 1298 (11th Cir. 2007)). "In other words, arbitration of a dispute should only be ordered where the court is satisfied that neither the formation of the parties' arbitration agreement nor its enforceability or applicability to the dispute is in issue." *Solymar Inv., Ltd. v. Banco Santander S.A*., 672 F.3d 981, 990 (11th Cir. 2012) (citing *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 130 S.Ct. 2847, 2855 (2010)).

## IV. ARGUMENT

Defendants' Motion to Compel Arbitration should be denied. A valid written agreement to arbitrate does not exist between the parties, and even if one does, Plaintiffs' claims are beyond the scope of any such agreement and thus not arbitrable. Further, assuming the Court determines that an agreement even exists, Defendant Fluent is not a signatory to the arbitration agreement and is not entitled to enforce the agreement.

### A. A Valid Agreement to Arbitrate does not Exist.

#### 1. Plaintiffs did not Agree to Arbitration.

As held by this Court, "parties cannot be forced to submit to arbitration if they have not agreed to do so." *McDougal v. Comcast Corp.*, No. 16-cv-81906-MIDDLEBROOKS/BRAN, 2017 U.S. Dist. LEXIS 27200, at *7 (S.D. Fla. Feb. 23, 2017) (quoting Magnolia Capital Advisors, Inc. v. Bear Stearns & Co., 272 F. App'x 782, 785 (11th Cir. 2008)). "[A]rbitration is 'a matter of consent, not coercion[,]'" and "a party ordinarily will not be 'compelled to arbitrate unless that party has entered into an agreement to do so.'" *World Rentals and Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008) (citations omitted). In seeking to compel arbitration, "[t]he party asserting a contract must prove its existence by a preponderance of the evidence." *McDougal*, 2017 U.S. Dist. LEXIS 27200 at *7 (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).

Defendants have not met their burden to prove the existence of enforceable agreement to arbitrate. Plaintiffs dispute (1) completing the registration form on Defendants' website; (2) agreeing to Defendants' Terms and Conditions; and (3) agreeing to arbitrate the claims asserted in this lawsuit. Defendant, for its part, has presented this Court with vague, incomplete, and incorrect information that should be a cause for concern. First, Defendants will not disclose the websites

5

Plaintiffs allegedly visited. Second, the information contained in the on-line registration forms produced by Defendant is incorrect and not Plaintiffs' information, with the exception (coincidentally) of Plaintiffs' telephone numbers. Third, Defendants fail to explain why they would be sending text messages encouraging Plaintiffs to visit Defendants' websites after Plaintiffs had supposedly visited and registered through one of Defendants' websites. In sum, Defendants have not shown that valid enforceable agreements exist, have raised more questions than answers, and their Motion to Compel should be denied.

> **2. The Purported Arbitration Agreement Does not Encompass Plaintiffs' TCPA Claims.**

Even if the Court finds that Plaintiffs agreed to arbitration, Defendants' Motion to Compel should be denied because Plaintiffs' claims do not fall within the scope of the arbitration agreement. "Claims are subject to arbitration where they fall within the scope of a valid and enforceable arbitration agreement." *McDougal*, 2017 U.S. Dist. LEXIS 27200 at *8-9 (quoting *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1323 (S.D. Fla. 2016) (citing *Benoay v. Prudential—Bache Sec., Inc.*, 805 F.2d 1437, 1440 (11th Cir. 1986))). Under Florida law, "the plain meaning of the actual language used by the parties controls." *McDougal*, 2017 U.S. Dist. LEXIS 27200 at *9 (quoting *Pol v. Pol*, 705 So. 2d 51, 53 (Fla. 3d DCA 1997)).

Here, the arbitration provision Defendants seek to enforce provides in pertinent part: "If you have a dispute concerning any aspect of these Terms & Conditions, the RZU Website, your participation in a Promotion, or entitlement to an Incentive, you should first contact customer support on the RZU Website or by completing a customer support ticket." [ECF No. 22-1 at pg. 3]. Defendants unpersuasively contend that Plaintiffs' TCPA claims fall within the scope of the arbitration agreement because Plaintiffs' claims are somehow "related to their use of Reward

Zone's website and their registration to participate in promotions." [ECF No. 22 at pg. 12]. But Plaintiffs' claims are clearly not related to their use of Defendants' website or their participation in any of Defendants' promotions. Nor are Plaintiffs' claims related to the Terms and Conditions, or entitlement to an incentive from Defendants. Plaintiffs allege that Defendants sent telemarketing text messages to their cellular telephones without their express written consent, and nothing more.

### B. Defendant Fluent is not Entitled to Compel Arbitration.

As an initial matter, Defendants' contention that New York law applies to the purported arbitration agreement is incorrect. "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Rimel v. Uber Techs., Inc.*, 246 F. Supp. 3d 1317, 1324 (M.D. Fla. 2017) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). Consequently, the arbitration clause must be severed from the Terms and Conditions containing the New York choice of law provision and Florida law controls. *See Rimel*, 246 F. Supp 3d. at 1324 (citing *Suarez v. Uber Techs., Inc.*, 2016 WL 2348706, at *4 (M.D. Fla. May 4, 2016)).

Under Florida law, "a non-signatory to a contract containing an arbitration agreement ordinarily cannot compel a signatory to submit to arbitration." *Drayton v. Toyota Motor Credit Corp.*, 686 F. App'x 757 (11th Cir. 2017) (quoting *Marcus v. Fla. Bagels, LLC*, 112 So. 3d 631, 633 (Fla. Dist. Ct. App. 2013)). "[T]he equitable estoppel doctrine has been found to apply when one party attempts to hold [another party] to the terms of [an] agreement while simultaneously trying to avoid the agreement's arbitration clause." *Id*. Where a plaintiff does not seek to hold the non-signatory defendant to the terms of the agreement containing the arbitration clause, the equitable estoppel exception is inapplicable. *See Drayton*, 686 F. App'x at 759 ("equitable estoppel

is not appropriate for this case because Drayton is not seeking to hold Toyota to the terms of the RBO, or even the RISC for that matter.").

Here, Defendant Fluent candidly admits that it is a non-signatory. Under controlling Eleventh Circuit precedent, Defendant Fluent is precluded from compelling arbitration. Additionally, the equitable estoppel exception does not apply because Plaintiffs have not attempted to hold Defendant Fluent to the terms of the Terms and Conditions while attempting to avoid arbitration. Thus, at a minimum, Defendant Fluent's request to compel arbitration should be denied.

## V. CONCLUSION

Defendants have failed to meet their burden. They have not established that a valid agreement to arbitrate exists or, at a minimum, that Defendant Fluent is entitled to compel arbitration. Defendants' Motion to Compel should be denied and the case permitted to proceed on the merits.

**WHEREFORE**, Plaintiffs, Laura Hilton and Anna Nikerina, respectfully request an order denying Defendants' Motion to Compel Arbitration, and for such other and further relief deemed appropriate under the circumstances.

Dated: January 22, 2018

Respectfully Submitted,

| **HIRALDO P.A.** | **LAW OFFICES OF STEFAN COLEMAN P.A.** |
|---|---|
| */s/ Manuel S. Hiraldo* | Stefan Coleman, Esq. |
| Manuel S. Hiraldo, Esq. | Florida Bar No. 00030188 |
| Florida Bar No. 030380 | 201 S. Biscayne Blvd., 28th Floor |
| 401 E. Las Olas Boulevard | Miami, Florida 333131 |
| Suite 1400 | Telephone: (888) 333-9427 |
| Ft. Lauderdale, Florida 33301 | Facsimile: (888) 498-8946 |
| mhiraldo@hiraldolaw.com | |
| Telephone: 954.400.4713 | |
| | |
| *Counsel for Plaintiff and the Class* | *Counsel for Plaintiff and the Class* |

## CERTIFICATE OF SERVICE

I HEREBY CETIFY that on January 22, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Manuel S. Hiraldo*
Florida Bar No. 030380
*Counsel for Plaintiff*
